STATE OF MARYLAND, FOR THE USE OF JAMES R. CREECY, USE OF WILLIAM A. MOALE, *vs.* JOHN B. LAWSON, JOHN MATTHEWS AND JOHN B. WILLS.—*December* 1844.

The courts of *Maryland* have, for a long period, sanctioned the abbreviated form of a return, cepi, by the sheriff, to the writ of *capias ad satisfaciendum*.

Such a return is in legal effect, a declaration by the sheriff on oath, that by virtue of the writ, he had taken the body of the defendant, and him had ready to produce before the court, at the time and place, as commanded by such writ.

The sheriff's return is *prima facie* evidence of the truth of the facts which it discloses.

In this State, anterior to the acts of 1811 *ch.* 161, *sec.* 2, if the sheriff made an arrest under a capias on final process, and suffered the party arrested to escape, he could not again arrest the same party, on the same process, without rendering himself obnoxious to an action of trespass for false imprisonment.

This disability was removed by that act, and the power conferred on the sheriff to make a second arrest, of the same party, by virtue of the same process. But it did not protect the sheriff against the demand of the plaintiff in the process for an escape.

The act of 1828, *ch.* 50, *sec.* 2, declared that if the sheriff produced the body of the defendant at the return day of the writ, he should not be liable for any intermediate escape. This act is not confined to arrests on *mesne* process, but applies to *final* process, attachment as well as *capias*.

Before the act of 1828, the sheriff on *mesne* process was authorised to arrest the defendant a second time; and the reason and policy of the law was by it extended to arrests on *final* process.

Where a sheriff arrests the defendant on *final* process, and has him ready to be delivered up at the return day of the writ, on the demand of the plaintiff, this in law is a performance of his duty.

In an action on a sheriff's bond, for an alleged permissive escape by the sheriff of a party arrested on a ca. sa., which that officer had returned *cepi*, the plaintiff may show that such return is untrue in point of fact, and that the sheriff had not the body of the defendant in court, at the return day of the writ, ready to be delivered up on the demand of the plaintiff.

After an arrest under a *ca. sa.*, and a permissive escape before the return day has been proved, the burthen of showing, that the sheriff had the body of the defendant in court, according to the exigencies of the writ and his return of *cepi* thereto, is upon the sheriff.

In an action on the case at common law against the sheriff for an escape, he may offer evidence in mitigation of damages. The amount recovered against the party arrested, is not conclusive on that question.

State, use of Creecy, *vs.* Lawson et al.—1844.

The statutes of 13 Edw. 1, ch. 11, and 1 Rich. 2, ch. 12, first gave the action of debt against a gaoler or sheriff for an escape.

Where the statutable remedy is pursued, the sheriff is put by the statute in the same situation in which the original debtor stood, and the jury cannot give a less sum than the creditor would have recovered against the defendant in the original suit.

The action on the sheriff's bond to recover damages for an escape, is neither the common law action on the case, nor the remedy granted by the statutes of *Edward* and *Richard.*

In an action on a sheriff's bond, conditioned for the faithful discharge of his duties, the defendant is liable to no more damages for an alleged escape under final process, than the plaintiff has actually sustained, to be ascertained by the verdict of a jury, and hence the sheriff and his sureties may show under such a breach, in mitigation of damages, the insolvency of the original defendant from the time of the issue of the ca. sa. until its return.

There are many instances in which, on the assignment or suggestion of breaches under the Stat. 8 and 9 Will. 3, the measure of damages is fixed and certain, but they arise from the peculiar circumstances of each case, and not from any general rule.

On a judgment by default in a suit on a sheriff's bond for an escape, the court would not assume the power of assessing damages and giving final judgment.

The act of 1768, *ch.* 10, *sec.* 1, enables any plaintiff in an execution to call upon the sheriff to produce the body of the defendant before the court, and on his default, on motion, to cause judgment to be entered up for the full amount of his claim, principal, interest and costs.

Where such a course is adopted, in an action on the sheriff's bond, assigning as a breach the non-payment of such a judgment, that officer and his sureties would be liable for the full amount of the judgment.

The act of 1768, ch. 10, is not merged in the act of 1794, ch. 54, but is now in full force and frequently practised under.

The failure of a plaintiff in a ca. sa., to call on the sheriff at the return of the writ to produce the body of the defendant in court, does not furnish any ground of presumption, in an action against the sheriff for a default, that the defendant was discharged out of the custody of the sheriff by the consent of the plaintiff.

The failure of a plaintiff to pursue one legal remedy against a sheriff in default, cannot be construed into the abandonment of another legal remedy against that officer, for the same default.

APPEAL from *Charles* County Court.

This was an action of *Debt*, commenced on the 13th March 1828, by the appellee on the bond of the appellants, dated 29th December 1835, with condition that *J. B. L.*, as sheriff of *Charles* county, should discharge the duties of that office.

The defendants pleaded general performance, and the plaintiff assigned as a breach: 1st. The recovery of a judgment by *James R. Creecy* against *John Tucker*, at August term 1835 of *Charles* county court; the issue of a ca. sa. thereon on the 26th September 1836, returnable on the 3rd Monday of March 1837; the arrest and custody of *J. T.* under said writ, and his escape therefrom; and 2nd. A default in not returning the writ according to its command, though called, &c.

The defendants rejoined, that the said *John B. Lawson* has well and truly fulfilled and performed the duties of sheriff of the said county of *Charles*, and hath well and truly executed and returned all writs, process and warrants to him directed and delivered, which, according to the form and effect of the said condition of the writing obligatory aforesaid, he ought to have done, which they pray may be enquired of the country, &c.

1st Exception. In the trial of this cause, the plaintiff, to support the issues on his part joined, read in evidence to the jury the record of a judgment obtained in *Charles* county court, as stated in the replication, and also the writ of *ca. sa.*, issued and returnable as before stated. On the back of which said writ of *capias ad satisfaciendum* is thus written, to wit: "*Cepi, John B. Lawson, sheriff.*"

And also gave in evidence to the jury, by legal and competent witnesses, that after the day of the issuing of the said *ca. sa.*, to wit, in October 1836, the said *John Tucker*, in the judgment and *ca. sa.* mentioned, was seen by the witness in and residing in *Charles* county aforesaid; that after the issuing of the said writ of *ca. sa.*, to wit, in February 1837, the said *Tucker* was seen at and was residing in *Vicksburg*, in the State of *Mississippi*. The plaintiff also gave in evidence that the said *Tucker* was seen and conversed with by plaintiff's attorney in December 1836, at *Annapolis;* and further gave in evidence to the jury, by legal witnesses residing in *Charles* county aforesaid, that they never saw the said *Tucker* in *Charles* county since *January* 1837.

The defendant then proved, that the *March* term of *Charles* county court, commencing on the third Monday of March 1837, was continued over until the first Monday of June 1837, and that ample time, according to the usual course of communication and conveyance, existed for said *John Tucker* to come from *Vicksburg* to *Port Tobacco*, from the time he was last seen in *Vicksburg*, so as to be before *Charles* county court at *March* term 1837; and thereupon, the plaintiff prayed the court to instruct the jury, that if they find from the evidence that *John Tucker* aforesaid, was in *Charles* county after the issuing of the said *ca. sa* , and before its return, to wit, in October 1836, and that the said writ was served upon him, and that afterwards, to wit, in *February* 1837, he was seen and residing in *Vicksburg*, in *Mississippi*, then, that the plaintiff is entitled to recover, unless the defendants prove to the satisfaction of the jury that the defendant, *Lawson*, the sheriff, had the body of the said *Tucker* before *Charles* county court, at March term 1837, to render him in execution for the debt before mentioned, according to the exigency of the said writ of *ca. sa.;* which instruction the court (C. DORSEY, A. J.) gave to the jury. The defendant excepted.

2ND EXCEPTION. After the evidence in the first bill of exceptions was given, which is also here incorporated, the defendants offered to prove to the jury by legal and competent witnesses, that at the time of the issuing the *ca. sa.* up to the time of the return thereof, the said *Tucker* was wholly insolvent and unable to pay the judgment and execution aforesaid, or any part thereof, for the purpose of mitigating the amount of damages which might be found by the jury in this action in favor of the plaintiff; but the court, upon the plaintiff's objection to the introduction of the said proof under the pleadings in the case, refused to permit the said proof, for the purpose aforesaid, to be given to the jury, and were of the opinion and so instructed the jury, that the sum recovered in the judgment above mentioned, with interest thereon up to the present time, with all costs awarded to the plaintiff in the said judgment, was the true measure of damages which the plaintiff was

9    v.2

entitled to recover in this action, if they, from the evidence given in the cause, should find for the plaintiff; to which refusal and opinion and instruction, the defendant excepted.

3RD EXCEPTION. After the evidence already given in the former bills of exceptions, which is here incorporated, the defendants, by their counsel, prayed the court to instruct the jury, that it was incumbent upon the plaintiff to satisfy them by legal evidence, that the *ca. sa.* aforesaid had come to the hands of the said *Lawson*, as sheriff, and had been served upon the said *Tucker* before the said *Tucker* was seen in *Vicksburg*, and that the said sheriff had not the body of the said *Tucker* in his custody, so that he could have brought him at any time during the continuance of the March term 1837, before the court to be committed in execution, if called upon so to do.

The defendant also prayed the court to instruct the jury, that if they find from the evidence in the cause, that said *Tucker* was going at large and out of the custody of the said sheriff in December 1836, and the said sheriff was not called upon to return said *ca. sa.*, or have the said *Tucker* before the court, that then they may presume that the said *Tucker* was, by the consent of said plaintiff, discharged out of the custody of the said sheriff, and that the plaintiff, in that event, is not entitled to recover; which instruction the court refused to give. The defendant excepted.

4TH EXCEPTION. After the evidence in the previous bills of exceptions was given, which is here also incorporated and made a part of this exception, the defendant read in evidence to the jury the record of proceedings of *Charles* county court, at March term 1837, in the case aforementioned of *James R. Creecy* against *John Tucker*, upon the execution docket thereof, also the record of proceedings of said court at August term 1837, in the case aforementioned :

*James R. Creecy*, use of *William A. Moale*, vs. *John Tucker. Charles* county court, March term 1837. 2 *ca. sa.* "*Cepi.*"

*James R. Creecy*, use of *William A. Moale*, vs. *John Tucker. Charles* county court, August term 1837. August 22. On motion of plaintiff's attorney, rule on *John B. Lawson, Esq.*,

late sheriff of *Charles* county, to produce the body of the defendant; motion overruled.　　　Test,

JOHN BARNES, *Clk.*

And prayed the court to instruct the jury, if they find from the evidence in the cause that the said *Lawson*, the sheriff, was not called upon to return the said *ca. sa.* at March term 1837, and he was not called upon to have the body of the said *Tucker* before the said court at the said term, but that the said plaintiff forbore or neglected to call upon the said sheriff to return the said writ and have the body of the said *Tucker* before the said court, and afterwards, at August term 1837 of said court, did move the said court to compel the said sheriff to have the body of said *Tucker* before the said court, to be committed in execution, and that said court then and there refused to grant the said motion and order, that then they find for the defendants, unless they find that the *ca. sa.* aforesaid came to the hands of the said sheriff, and was served upon the said *Tucker* before he the said *Tucker* was seen in and residing at *Vicksburg*, and that the sheriff had not the body of the said *Tucker* in his custody at any time during the continuance of March term 1837 of said court, so as to bring him before the said court at that term, if called upon so to do; which instruction the court refused to give, and to which refusal the defendants excepted.

5TH EXCEPTION. After the aforegoing evidence was given, mentioned in previous bills of exceptions, which is also here incorporated, the defendants by their counsel prayed the court to instruct the jury, that if they find from the evidence in the cause that the plaintiff refused or neglected to call upon the sheriff aforesaid to return the said writ of *ca. sa.*, and to have the body of the said *Tucker* before the said court, to be committed in execution, during the continuance of the March term 1837 of the said court, that then the plaintiff is not entitled to recover; which opinion and instruction the court (C. DORSEY, A. J.) refused to give; to which refusal the defendant excepted.

The verdict and judgment being for the plaintiffs, the defendants prosecuted this appeal.

The cause was argued before ARCHER, CHAMBERS, and SPENCE, J.

By CRAIN and McMAHON for the appellants, and
By GLENN and ALEXANDER, for the appellees.

SPENCE, J., delivered the opinion of this court.

This was an action of *debt* on a sheriff's bond, brought to recover damages for an escape of a party, arrested by the sheriff on a *capias ad satisfaciendum.*

The *capias* was returned to the March term of *Charles* county court, by *Lawson*, the sheriff, endorsed, "*Cepi.*" The sanction of the courts of *Maryland*, so long, of this abbreviated form of return, we deem conclusive of its correctness. Let us next consider the purport of such a return.

We understand this return to be a declaration by the sheriff on oath, that, "by virtue of this writ, he had taken the within named *Tucker*, whose body he had ready before *Charles* county court within named, at the day and place within contained, as he was within commanded."

In the language of *Watson on Sheriff*, 68, "returns are nothing else but the sheriff's answers, touching that which they are commanded to do by the king's writ, and are but to ascertain the court of the truth of the matter."

"Credence is given to the return of the sheriff, so much so, that there can be no averment against the sheriff's return in the same action." "Even in another action, the sheriff's return is *prima facie* evidence of the facts contained in it." *Watson on Sheriff*, 52, 53.

Thus we see that the sheriff's return is *prima facie* evidence of the truth of the facts which it discloses. But it was insisted in the argument, that the strict requirements of the law, in relation to escapes, voluntary or otherwise, on the part of the sheriff on final process, was not modified by the 2nd section of the act of 1811, ch. 161, and the act of 1828, ch. 50.

These acts, it is insisted, have application to attachments and *capias* on mesne process only. From this construction of these statutes we must dissent.

In *Maryland*, anterior to the act of 1811, ch. 161, sec. 2, if the sheriff made an arrest under a *capias* on final process, and suffered the party arrested to escape, he could not again arrest the same party on the same process, without rendering himself obnoxious to an action of trespass for false imprisonment. This disability the second section of the act of 1811, ch. 161, removed, by conferring the power on the sheriff to make a second arrest of the same party, by virtue of the same process. But this statute, while it protected the sheriff against the party so arrested a second time, did not protect him against the demands of the plaintiff in the process, for an escape. Thus the law stood until the act of 1828, ch. 50, which act, in all probability was passed in consequence of the case of *Koones vs. Maddox,* 2 *Harr. & Gill,* 106, which case was decided by this court at June term 1827, and the act of 1828, ch. 50, was passed at the next succeeding session of the Legislature. The statute of 1828, ch. 50, re-enacts the second section of the act of 1811, ch. 161, and in the second section of the act of 1828, ch. 50, there is this additional provision : "that, if such sheriff or officer shall produce the body of such person, so arrested, on the return day of such attachment or *capias,* or during the term of the court to which the writ is or may be returnable, then, and in such case, the said sheriff, or other officer, shall not be liable for any intermediate escape, &c." By what rule of construction this act is to be confined to arrests and returns on mesne process only, we are at a loss to discover. The language is any attachment or *capias.*

Finding no expression in the statute of 1828, ch. 50, which limits and confines it to a *capias* on mesne process, the letter and reason of the statute, and the policy of the law, making it as applicable to final, as mesne process, we can see no reason for such a construction ; and what is conclusive, such was the law in relation to arrests on mesne process before the passage of the act of 1828, ch. 50.

The return then of *cepi* by the sheriff, (if true in fact,) notwithstanding the party arrested had been seen going at large and residing at *Vicksburg* in February, provided the sheriff had him in his custody ready to be delivered up at the return of the writ, on the demand of the party at whose instance the *capias* was issued, was in law a performance of his duty, and exonerated him from liability in an action on his bond for an escape. But at the trial below, the plaintiff alleged that the return was not true in fact; that the sheriff had not the party so arrested in court; and offered evidence to prove that the return of the sheriff was not true, and upon the evidence thus submitted to the jury, prayed the court to instruct the jury, that they must find for the plaintiff, "unless the defendants proved to the satisfaction of the jury that the defendant, *Lawson,* (the sheriff,) had the body of the said *Tucker* (the party arrested on the *capias*,) before *Charles* county court at March term 1837, to render him in execution for the debt before mentioned, according to the exigency of the writ of *ca. sa.*" This instruction the county court gave, and we think, correctly gave.

The sheriff's return was only *prima facie* evidence of the truth of the facts which it averred, and the plaintiff having offered proof admissible to the jury for the purpose of rebutting the *prima facie* evidence of the truth of the sheriff's return, the court did right to give the instruction which they did give.

At the trial of the cause, the defendants offered to prove to the jury by competent witnesses, (for the purpose of mitigating the damages,) that *Tucker,* for whose escape the action was brought, was, at the time of issuing the *capias,* and so continued to be, insolvent and unable to pay his debts. To the admissibility of which testimony the plaintiff objected, and the court sustained the objection, and refused to permit the evidence for that purpose to go to the jury, and instructed the jury that the sum recovered in the original judgment, with interest thereon to that time, together with all costs, was the proper measure of damages which the plaintiff was entitled to recover, if they from the evidence should find for the plaintiff. To this refusal and instruction, the defendant excepted.

This instruction and exception present the question, whether in an action on the official bond of a sheriff for an escape of a party arrested by him on *capias ad satisfaciendum,* it is competent for him to offer in evidence any facts to mitigate the damages, and, whether the proper and only measure of damages is the amount of the judgment, interest, and costs, on which the *capias ad satisfaciendum* issued ?

It is settled by authority, that, in an action on the case for an escape at common law, it was competent for the defendant to offer such evidence for such a purpose. *Vide Sel. N. P.* 504, *tit. Debt,* for this position.

This was the only remedy a plaintiff had at common law, until the statute of *West.* (13*th Ed.* 1, *ch.* 11.) and 1 *R.* 2, *ch.* 12. These statutes first gave the action of debt against a goaler or sheriff for an escape. Where this remedy is employed under the statutes, the sheriff is put in the same situation in which the original debtor stood, and the jury cannot give a less sum than the creditor would have recovered against the defendant in the original suit.

This is the penalty which the statutes referred to, annexed to such a default on the part of the sheriff. But the remedy employed in this case is neither the action on the case at common law, nor of debt under the statutes of *West. & Richard;* but an action of debt on a bond with a collateral condition, for the faithful discharge of official duties as sheriff. The bond, it is. true, is a statutory bond, but the remedy on the bond is the common law remedy of action of debt on a bond with a penalty.

At common law, where judgments were rendered on such bonds, they were for the penalty, and the plaintiff could take out execution for the same, although the penalty far exceeded in amount the damages which he had sustained by the breach of the condition of the bond.

The only relief which a defendant could have was from the interposition of a court of equity, which would direct an issue of *quantum damnificatus,* and prevent an execution being enforced for more than the actual damages. To remedy this

hardship and to avoid this circuitous mode of relief to which defendants thus situated were driven, the Stat. 8 and 9 *William* 3, *ch.* 11, was enacted. This statute has been adopted in *Maryland,* and this case being within the equitable provisions of the statute, the defendant is liable to no greater damages than the plaintiff has actually sustained, to be ascertained by the verdict of a jury under *the 8th sec. of the 11th ch. of the stat.* 8 *and* 9 *William* 3; *Perkins et al vs. Giles, governor,* 9 *Leigh's R.* 397.

We cannot see the force of the argument of the appellee's counsel, which insisted that the judgment and costs on which the writ of *ca. sa.* issued, was the only measure of damages, and which could not be mitigated by any testimony; or in other words, that any evidence for such purpose was inadmissible.

The object of the statute which requires the sheriff's bond and prescribes its condition, was to provide more ample security to all persons interested in its faithful performance; not to increase his obligations, or to render a more summary redress for his defalcations, than existed by action on the case at common law, and therefore not to conclude him from any defence which he had in that action.

If, in a suit before the bond was required, actual damages only could be recovered, unless the action, under the statutes of *West.* 13 *Ed.* 1, *ch.* 11, and 1 *R.* 2, *ch.* 12, was adopted, why should the amount to be recovered be different after the bond? A suit on the bond is no more a pursuit of the remedy prescribed by the statutes, than was the action on the case.

The argument derived from the fact, that, in certain cases the damages are certain, and must be measured ·by a certain standard, does not prove that such must be the case here. There are many instances in which, on the assignment or suggestion of breaches under the statute 8 and 9 *William* 3, the measure of damages is fixed and certain; but they arise from the peculiar circumstances of each particular case, not from any general rule, which can be applied to this case in common with them, and where no such particular reason exists for the exact measure of damages, the party can only recover what

State, use of Creecy, *vs.* Lawson, ot al.—1844.

the jury shall believe he may have actually sustained, after a full investigation of all the facts.

There are also cases referred to, in which the court will assess the damages without requiring the forms to be pursued which the statute 8 and 9 *William* 3, prescribed, in assigning breaches, and the cases of bail bonds, and others, have been instanced. But it will hardly be contended, that on a judgment by default in a suit on a sheriff's bond for an escape, the court would assume the power of assessing damages, and giving final judgment, assuming that the cases respecting bail bonds, &c., are recognised as the law and practice of the courts in *Maryland*, which we by no means intend to assert.

There appears to be less reason for considering the plaintiff necessarily entitled to recover in this action the full amount of his debt, because there is a perfect remedy afforded him by the act of 1768, ch. 10, sec. 1, which enables any plaintiff in an execution to call upon the sheriff to produce the body of the defendant before the court, and on his default, on motion to cause judgment to be entered up for the full amount of his claim, principal, interest, and costs.

If the plaintiff had thought proper to adopt this remedy he could have had his remedy on the bond, and on assigning as a breach the non-payment of such a judgment against the sheriff the securities would clearly be liable for the full amount, as in such case the judgment against the sheriff would be the proper measure of damages; and as the plaintiff in this case has forborne to pursue this mean of redress, he cannot complain. It has been erroneously supposed this act of Assembly was merged in that of 1794, ch. 54. This act is now, and always since its passage, has been in full force and frequently pursued in practice.

By the decision on the first bill of exceptions, it has been determined that it was incumbent on the defendant to shew that he had the body of *Tucker* before *Charles* county court at March term 1837. The first instruction of the third prayer could not therefore be granted.

10     v.2

We also think the court were right in refusing the second instruction in the third prayer; for, although the sheriff may not have been called on to return the *ca. sa.* against *Tucker*, such failure on the part of the plaintiff would furnish no ground for any presumption that the defendant was discharged out of the custody of the sheriff by the consent of the plaintiff. The failure of the plaintiff to pursue one legal remedy against the sheriff, could not upon any sound principle be construed into an abandonment of another, or into a consent to *Tucker's* discharge.

We think our reasoning and conclusions are alike applicable to the fourth as the third exception.

We concur with the county court in the *fifth* exception. The instruction therein asked, if granted, would make the sheriff's return, whether true or false, conclusive.

The case is therefore reversed on the *second* exception, and procedendo awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.