### John W. Atwood et als. *vs.* Rhode-Island Agricultural Bank et als.

A Bank charter contained the following section : "The stockholders of said Bank shall be personally and individually liable for all losses, deficiencies and failures of the capital stock of said Bank ;" *held*, that this section made the stockholders personally liable to the creditors of the Bank for its debts, in proportion to their respective shares in the stock of the same.

In a petition to the General Assembly, which was acted upon, the stockholders declared the private property of the stockholders to be holden for the debts of the Bank, and also published upon the bills of the Bank, "stockholders' private property holden," *held*, these acts were a construction of the charter by the parties themselves, which they could not be permitted afterwards to repudiate.

A liability created by statute is a specialty, and an action thereon in Equity is not barred by the statute of limitations, though not commenced within six years after it has accrued.

Actions against stockholders for the debts of a Bank involve complex contributions among the stockholders and are the proper subject of Equity jurisdiction.

Where the receiver, appointed to wind up the affairs of the Bank, stated in his answer, that he did not deem it his duty to sue the stockholders on behalf of the creditors, it was *held* that the creditors were authorized in commencing their suit against the stockholders without first requesting the receiver to sue them.

THIS was a bill in equity, brought by John W. Atwood and others, creditors of the Rhode-Island Agricultural Bank against the President, Directors and Company of said Bank, and against the receiver and stockholders thereof. The facts in this case are as follows : In 1843, the Bank was largely indebted to the plaintiffs for sums of money deposited in the Bank, for which the plaintiffs held checks and certificates of deposite signed by the proper officers. At the June session of the General Assembly of 1843, the Bank was put in commission and enjoined from exercising its corporate privileges. At the October session of the General Assembly, a receiver was appointed and an act passed staying any suits, either in law or equity, against the Bank or the stockholders. The receiver having declined his appointment at the January session of the General Assembly, 1844, the present receiver was appointed, who accepted the office and was qualified. The claims of the plaintiffs were submitted to this receiver, who refused to pay the same ; and the plaintiffs thereupon sued the Bank and obtained judgment in favor of their claims. The General Assembly at their October session, 1845, granted a further stay of proceedings in favor of the Bank and the stockholders, and afterwards continued the same until October, 1846. At the March term of the Supreme Court, 1849, a Master in Chancery, appointed by the Court, upon an application of the receiver for instructions, made report to the Court, from which it appeared that the liabilities of the Bank considerably exceeded the assets. The bill, after charging that this deficiency was occasioned by the mismanagement of the officers of the Bank, set forth the following section of the act incorporating the Bank, viz. " Section 3. Be it further enacted, that the stockholders

of said Bank shall be personally and individually liable for all losses, deficiencies, and failures of the capital stock of said Bank," and proceeded to charge, that " the receiver, although well knowing said deficiency, has not commenced proceedings against said stockholders for the purpose of replacing the capital stock lost as aforesaid, or such an amount thereof, as might be necessary to pay your orators and other creditors of said Bank, and that the other defendants, stockholders of said Bank, have neglected and refused to replace the same, and deny their liability to do the same, notwithstanding the plain and explicit provision of said act of incorporation." The bill concludes with a prayer that an account may be taken of the debts and assets of the Bank, and that the stockholders may be decreed to pay in so much of the losses, deficiencies and failures, not exceeding the whole of said capital stock, as shall be sufficient to pay in full with interest the claims of the creditors, and that the fund so raised, may be decreed to be distributed among such creditors in proportion to their respective claims, and for general relief.

To this bill the receiver filed his separate answer, wherein, after stating the manner in which he had discharged his duties, he avers " that he hath never commenced any suit at law or equity against said stockholders in behalf of the creditors for the adjudication of their claims, because he hath never deemed it his duty so to do ; nor, hath he at any time been directed by the General Assembly, from whom he received his appointment, and whose agent in the settlement of the affairs of said Bank he considered himself to be, so to do ; nor hath he been requested at any time by any creditor of said Bank to commence such proceedings."

The stockholders in their answer, in addition to the facts responded to and alleged, raised the two following defences in law, viz :

1st.   That the right of suit, if any there be, created by the third section of the charter is vested in the corporation and not in the plaintiffs.

2d.   That the right of suit, if any there be, is barred by the statute of limitations.

And it was agreed by the parties that these defences should be first argued and decided by the Court in the same manner and with the same effect, as if they had been raised by plea or demurrer.

The plaintiffs also put into the case a petition for a stay of proceedings, preferred to the General Assembly in October, 1845, by a committee of the Bank, and in which they used the following language : " and it is now ascertained, that the property of the Bank will fall far short of its liabilities, and inasmuch as by the charter of the Bank the private property of the stockholders is holden, the deficiency must be made up by them," &c. It also appeared that the bills of the Bank bore the inscription, " *stockholders' private property holden.*"

This case was argued at the last March term, by W. H. POTTER and T. A. JENCKES, for the plaintiffs, and by J. WHIPPLE and CHARLES S. BRADLEY, for the defendant, and continued nisi for advisement.

BRADLEY.   At common law, corporators are not liable for the debts of the corporation ; and, therefore, since the plaintiffs contend against the analogies of the common law, they must make out affirmatively and plainly their right of action.

There are two classes of statutory modifications of the common law ; the one affects the relation of the stockholders to the corporation, the other, their relation to the creditors. In cases where claims have been recovered against the stockholders, as such, they have been made expressly liable to the creditors for the corporate debts. There is no provision to that effect in this charter.

There is a distinction between a bank and a manufacturing corporation. The one is a public, the other a private institution. In view of this distinction, the legislature has given this Bank certain powers beyond its common law powers. It has given it power to enforce contributions from its stockholders and power to enforce the payment of subscriptions, not only once, but twice and again, if necessary to keep its capital good. This power is given for the public and the private purposes of the Bank. The liability is to the corporation and not to the creditors. In *Baker vs. Atlas Bank*, (9 Met. 182,) which is a parallel case, the Court decided that a bill in equity could not be sustained by the creditors against the stockholders, but that the action against the stockholders is given to the Bank. The statutes, applicable to both cases, are of the same legal effect. In *Wood vs. Dunlow*, (3 Mason, 311,) the Court held the stockholders liable. But in this case, the capital stock was a trust fund, for the payment of creditors, and, having been divided out among the stockholders, it was held that there was a lien, which enabled the creditors to pursue it to whomsoever it came with notice of the lien. In 4 Am. Law Mag. 363, there is a decision that where no stock has been paid in, the creditors may recover against stockholders. In *Slee vs. Bloom.* (19 Johns. 456 & 5 Johns. Ch. 366,) the stockholders were held not to be liable un-

til after the dissolution of the corporation, and then by express provision of the charter. *Briggs vs. Penniman*, (8 Cowen 387. Ang. *&* Ames on corp., 544.) All the cases show that the liability must be founded either upon express statute or a trust fund in the hands of the stockholders.

The plaintiffs are barred by the statute of limitations. The acts to stay proceedings against the Bank do not take the case out of the statute, (Ang. on Limitations, 532.) *McIvor vs. Regan*, (2 Wheat. 28.) *Browning et al. vs. Paris et al.*, (5. M. & W., 117.) Neither is the case taken out of the statute by the nature of the liability. A statute liability was, by the old law, a specialty; and actions of debt upon a specialty, are excepted out of the statute. But in this case, if an action were brought at law, it would be assumpsit and not debt. *Bigelow vs. The Cambridge and Concord Turnpike Corporation*, (7 Mass., 202.) *Bath vs. Freeport*, (5 Mass., 326.) Debt lies where the damages are a sum certain. The duty imposed in this case is a very complicated act; and the action should be assumpsit or case, according as you consider it a contract or a duty. The bill in equity must be a substitution for the action at law and governed by its analogies.

POTTER and JENCKES for the plaintiffs contended :— This case should be considered in the light of the policy of our legislation, which has always been to subject stockholders to a personal liability. And the safety and credit of our banks has always been attributed to this policy. Nearly all our charters contain the personal liability clause, and none of them prescribe the mode of enforcing it. The charter is a contract with the State,

and this clause being inserted, is a condition precedent to their corporate existence. (Ang. & Ames 68.) The acceptance of the charter makes every subsequent act subject to that condition. The dealers with the bank dealt on the faith of the credit given to the bank by this clause. The form of words adopted in this charter is explained by the peculiarity of the charter, which allowed the bank to go into operation upon paying in $28, on the $50 a share of the capital. A deficiency was contemplated, and a remedy for the deficiency provided. This liability may be primarily to the corporation, yet since it was to benefit the creditors, the creditors are entitled to enforce the remedy if the corporation refuse. The principle is familiar, that, where a person holds a security for another, which he refuses to enforce, the beneficiary may be substituted to the rights of the trustee. There are two classes of cases, in which creditors have been held entitled to substitution; first, where stockholders have become liable by subscriptions, which they have not paid in : Second, where the liability results from the charter or their contract with the public. *Slee vs. Bloom*, (19 Johns. R. 456, and 5 Johns. Ch. R. 366. See also 6 Viner's Abr. 310. 1 Am. Law Mag. 96. 4 Am. Law Mag. 92.) *Penniman vs. Briggs*, (8 Cowen 387.) These authorities show that, where the stockholders are liable by charter to make good the losses of the capital stock, or have subscribed and have failed to pay in the amount of their subscriptions, the creditors may be substituted to the rights of the corporation to enforce these liabilities. *Ward vs. Griswoldville Manufacturing Company*, (16 Conn. 593.) In the case last cited, the stockholders were held liable purely upon the ground of contract ; we claim under a statute, which makes our case the stronger.

The decision in 9 Metcalf, 182, depended upon the construction of a general law. (Rev. Stat. of Mass. Ch. 36,) and upon the ground that the bank was no longer in existence, and consequently the equities of the creditors could no longer be wrought out through it. The defendants say, this third section confers a power; we say it imposes a duty, which, if they refuse to exercise, those for whose benefit it was imposed may exercise. They say this liability is in derogation of the common law, and should be strictly construed; but we do not subscribe to the doctrine, that where a grant is asked as a privilege, the conditions imposed in the grant are in derogation of the rights of the petitioners.

The language is, " The stockholders shall be personally and individually liable for all losses, deficiencies and failures of the capital stock." It is said this only gives the bank a right of action. If this had been the intention, would the General Assembly have used this language, which it has taken thirty years to put this construction upon; or would they not have said a majority of the stockholders shall have power to compel the stockholders to make good the losses and deficiencies of the capital stock? The bank could call in the subscriptions by a vote of the majority, according to the general law; but this clause, it is said, gave the right to call again and again. Is this likely? Would any one subscribe to a bank whose charter allowed them to lose the capital or distribute it, and to call again and again upon the stockholders to make good the deficiency. If this had been a grant of power, would not the clause have read " said bank shall have power"? Would the Legislature talk about personal and individual liabilities? This construction, in plain words, is simply that the corporation shall

bear their own losses. It needed no special act to announce this principle.

The defendants are estopped from denying their liability by their own acts. In their petition for a stay of proceedings in 1845, they state to the General Assembly that their private property is holden, and a stay was granted in accordance with this petition. A similar stay had been granted in 1843. Would an act be passed to stay suits, unless somebody had a right of suit? This shows the construction of both State and stockholders, the two parties to the contract. They have, moreover, published their liability upon their notes; and men have taken them upon the faith of it, and they ought now to be precluded from denying it.

Another question is, whether we are bound by the statute of limitations? Statute liabilities are specialties, and, therefore, exempted by statute. *Bullard vs. Bell*, (1 Mason 243.) *Pease vs. Howard*, (14 Johns. 479.) *Van Hook vs. Whitlock*, (3 Paige 407.) It is said that debt will lie only for a sum certain; if this be so, these claims can be reduced to a certainty.

WHIPPLE, in reply. It has been decided that an action will not lie against the stockholders at law. We maintain that if the stockholders are dot liable at law, they cannot be made liable in equity, except in certain peculiar cases of trust. Where there is no trust, no equitable fact outside of the case, a court of equity cannot give a statute a different construction from what is given by a court of law. There may be such cases. Equity may reach a trust fund, as where subscriptions have not been paid, which cannot be reached at law. If stock, once paid in, is divided, a court of equity may

reach it, because a trust fund. This was so in the cases the defendants have cited. In all these cases, either the stockholders are personally liable for the debts of the corporation by statute, or their subscriptions have been withdrawn, or never paid in. (1 Hopkins 300.) If the corporators refuse to pay in their subscriptions, upon the faith of which the bills are circulated, the court will compel the payment, because they cannot appropriate their money to a trust purpose, and keep it in their pockets at the same time. There is not a decision to be found making corporators liable, except upon a statute, or because there is a trust fund in their hands. Now there is no pretence of any trust fund in the hands of the defendants. They have paid in all their subscriptions.

Unless there is some statute to the contrary, both at law and equity, corporators are not liable for the debts of the corporation. Have the legislature taken away this exemption ? You cannot infer it by implication. Common law privileges are not to be whittled away by inferences. Equity follows law. There are cases in which courts have larger powers at equity than at law ; but in construing statutes, contracts, obligations, and liabilities, they follow the law. · You have decided that the defendants are not liable at law, and where is the authority where courts of equity have created remedies which the law does not recognize, except in cases of trust ? When the statute imposes a direct personal liability, the remedy is concurrent in law and equity.

They find this liability in the third section of the charter. In those charters where the Legislature has imposed a personal liability, they have said so in terms ; and why not here ? There is an obvious reason for the language used. In case of deficiency, if the majority

John W. Atwood et als. *vs.* Rhode-Island Agricultural Bank et als.

should think best to go on, it was found advisable to give them power to compel the minority to contribute to sup-ply the deficiency. Does this make them liable to cred-itors? They are not to pay to anybody except to supply deficiencies of the capital stock. This was needed for the safety, not only of the bank, but of the public. Would the Legislature, if they had intended a personal and individual liability, have omitted the single line in which they usually express that intent.

This section does not impose a duty. If this charter made it the duty of the corporation to supply the defi-ciency, and they had neglected that duty, there would be a seeming propriety in praying this court to enforce a specific performance of it. The corporation may do so if it thinks it its interest; and if it rests in its volition, it can be compelled neither by creditors nor courts.

The acts of the defendants are set up as an estoppel. Suppose they have avowed their liability to pay these debts, would it bind them? A man may bind him-self by confessing a fact; but he cannot confess away his rights by a mistake of the law. Such a confession does not release the court from deciding the law as it is.

Greene, C. J. If the stockholders are liable in this proceeding, it must be by the third section of the charter. At common law the stockholders in a corporation are not liable individually for the corporate debts. The capital stock is the fund to which alone the creditors must re-sort, unless in cases of fraud. The following is the lan-guage of the section relied on by the plaintiffs: " The stockholders of said bank shall be personally and indi-vidually liable for all losses, deficiencies and failures of the capital stock of said bank." The construction put

John W. Atwood et als. *vs.* Rhode-Island Agricultural Bank et als.

on this section by the defendants is, that it was intended to confer upon the corporation the power to keep the capital stock good, in order to carry on the business of the bank.

We do not think this a reasonable construction of the section. The stockholders are by this construction made liable personally and individually to themselves. If the clause had been intended merely to keep the stock good by assessments upon the stockholders, we think the phraseology would have been different. We think the words "liable personally and individually," mean a liability for the benefit of creditors. These words "personally and individually," are used in contradistinction to corporate liability. Without the words the corporation was liable to creditors, and we think the intent of the section was to superadd the personal and individual liability of the stockholders to the corporate liability.

This construction is confirmed by the stockholders themselves, in the petition preferred by them to the General Assembly at their October session, 1845. At the time of this petition all the bills had been redeemed. The General Assembly acted upon the statements in the petition ; and thus both parties to the contract, the stockholders on the one hand, and the General Assembly on the other, affirm the construction which the court have put upon the charter.

In addition to this, the bills of the bank in circulation had the following inscription on them : "Stockholders' private property holden." Upon the faith of this liability of the private property of the stockholders, the bank has obtained credit, and the stockholders ought not now to be permitted to repudiate it.

The defendants counsel have referred to the case of *Baker & others vs. Atlas Bank & others,* (9 Met. 182.) The language of the Massachusetts Statute is, " If any loss or deficiency of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such mismanagement, shall in their individual capacity be liable to pay the same." The Court say, " the language of this section is certainly not very clear and explicit, but considering it in connexion with the 31st section, and other sections of the 36th chapter, its meaning we think may be ascertained with reasonable certainty." The main ground of the decision upon this section, admitted to be doubtful, was, that the 31st section creates a liability of the stockholders to pay all the outstanding bills, although they should exceed in amount the whole capital stock. The Court says, " To suppose that a double remedy was intended to co-exist, if not an absurdity, is a reproach upon the good sense and discernment of the legislature, and of the wise men who drew up these sections." The third section in the defendants' charter is the only remedy for bill-holders as well as other creditors.

But the defendants contend, if any liability existed, the claims of the plaintiffs are barred by the statute of limitations.

The words of our Statute are, "all actions of debt founded on any contract without a specialty," (Digest of 1844, sect. 1, p. 221.) This is the language of the New-Hampshire Statute, on which the case of *Bullard vs. Bell* was decided. The language is similar to the statute of James. In *Bigelow vs. The Cambridge and Concord Turnpike Corporation,* (7 Mass. 202,) it was held that where a statute gives a right to recover damages,

reduced pursuant to the provisions of such statute to a sum certain, an action of debt lies if no other remedy be given by the statute. In *Bullard vs. Bell*, (1 Mason 243,) all the cases are collected and examined. The Court there held that debt is the proper remedy, where the debt or duty is imposed by common law or statute, and lies not in unliquidated damages, but is capable of being reduced to a sum certain. And this rule is fully sustained by English and American authority. In *Van Horn & others vs. Whitlock & others*, (3 Paige 409,) it was held by Chancellor Walworth, [that upon a liability created by statute, the plaintiff may bring debt or assumpsit at his election, if no form of action is prescribed by the statute creating such liability, and that a suit in equity founded on such liability would not be barred till the expiration of the largest time limited for bringing either of these actions at law.

We think this a sound rule.

The question then recurs—if this liability could have been enforced by an action at law, and debt had been brought, would the statute of limitations have been a bar?

The Statute bars all actions of debt founded on any contract not a specialty. Now a statute obligation to pay money is a specialty, and we think the obligation of the stockholders to pay the deficiency is a specialty.

The next question is, whether the obligation of the stockholders is an obligation to pay unliquidated damages, or to pay a sum which can be reduced to a certainty?

We think each stockholder is bound to pay his proportion of the deficiency. The amount of this deficiency

is the excess of the debts over the assets of the bank.
This can be, and indeed already is, ascertained with cer-
tainty.  Then since the amount of this deficiency is to be
paid by the stockholders, each according to the amount of
his stock, there is no difficulty in ascertaining with cer-
tainty the amount which each stockholder is to pay.

The language of the Massachusetts Statute is differ-
ent from ours, and from the New-Hampshire Statute, and
from the Statute of James.   The Massachusetts Statute
bars "all actions of debt founded on any contract or
liability not under seal."   Now a liability created by
statute is a specialty, but is not a liability under seal.
The Rhode-Island and New-Hampshire Statutes bar only
actions of debt, founded on any contract without a spe-
cialty, and do not bar a liability created by statute.  The
decision in the case of *Baker & others vs. Atlas Bank
& others,* upon the Massachusetts Statute, was founded
upon this difference between the Massachusetts and New-
Hampshire Statutes.

The next question is, whether the case is one for the
equitable jurisdiction of this Court?

We think a Court of Equity is the only tribunal in
which to vest redress in cases like this.   The necessary
contribution which is involved in the case, renders it not
only a proper subject of equitable jurisdiction, but exclu-
sively so, (1 Hopkins 305.)

The last ground of defence remains to be considered,
and that is, that the bill does not allege a request by the
creditors to the receiver to sue the stockholders, and a
refusal by him to sue.

The bill might have been more full and explicit in this
particular.   It alleges that the receiver neglected and re-

fused to sue. Now a refusal implies a request, and in that the bill is well enough in this particular. But the answer of the receiver denies any request, and the plaintiffs have put in no proof upon this point. But the answer of the receiver does state that he hath never commenced any suit in law or equity against the stockholders in behalf of the creditors for the adjudication of claims, because he hath not deemed it his duty so to do. The receiver in his conduct in this particular, would of course be governed by his sense of duty, and no request by a creditor would have any influence upon him to do what he considered was not his duty. A request by a creditor would be a useless ceremony, as much as if he had told the creditors what he has stated in his answer. The rule on which this objection is founded ought not to be technically administered, and when, as in this case, a long term has elapsed without suit, and it is apparent that the receiver would not sue if request had been made, we feel ourselves justified in entertaining the present suit. In fact, upon strict common law principles, a refusal, without demand, supercedes the necessity of demand.

Decree. That the said defendants, owners of stock in said Rhode-Island Agricultural Bank, at the time of the failure thereof, are liable to make up the losses, deficiencies and failures of the capital stock of said Bank, so far as is necessary for the payment of the debts due from said Bank, which may be presented to the Master under this decree, and that said deficiency is to be made up by the stockholders in proportion to the amount of stock held by each at its par value. And a reference was ordered to a Master to ascertain the amounts to be sever-

ally contributed by the stockholders, and to report the same, together with other matters specified in the decree relative to their interest in the capital stock in said Bank. And the stockholders were to be at liberty to plead any special matter in discharge or bar of their liability as aforesaid, before said Master, (provided said special matters in defence be filed within ten days after the time first appointed for the hearing,) and the said Master to report the same with his opinion thereon, to the Court. And it was further ordered that said Master ascertain and determine the amount of counsel fees and other costs, charges and expenses which the plaintiffs have paid or become liable for in the prosecution of their claims against said stockholders; and that he divide and apportion the same among all the creditors of said Bank, who may on or before the first day of June next become parties to this suit, and apply for the benefit of this decree in proportion to their respective claims, and that he require the payment of said proportionate sum from each to the solicitors of the plaintiffs, before they are admitted to be creditors entitled to the relief granted by this decree.