749 A.2d 806

The **GREENE TREE HOME OWNERS ASSOCIATION, INC.**

v.

**GREENE TREE ASSOCIATES et al.**

**No. 95, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 17, 2000.

Raymond Daniel Burke (David Freishtat and William Michael Mullen, Jeffrey S. Rosenfeld of Freishtat & Sandler, on brief), Baltimore, for Petitioner.

Richard S. Hoffman (Paul Mogin of Williams & Connolly, on brief), Washington, DC; Philip M. Andrews, John F. Dougherty of Kramon & Graham, P.A., Baltimore; J. Mitchell Kearney of Brown, Diffenderffer & Kearney, LP, Towson; Douglas W. Biser and James R. Andersen of Mudd, Harrison & Burch, Towson, all on brief, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, WILNER, CATHELL, HARRELL and THEODORE J. BLOOM (retired, specially assigned), JJ.

RODOWSKY, Judge.

The question presented here is whether limitations on certain claims in the petitioner's first amended complaint are governed by Maryland Code (1974, 1998 Repl.Vol.), § 5–102 of the Courts and Judicial Proceedings Article (CJ). It provides:

"(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

"(1) Promissory note or other instrument under seal;

"(2) Bond except a public officer's bond;

"(3) Judgment;

"(4) Recognizance;

"(5) Contract under seal; or

"(6) Any other specialty.

"(b) *Suspension of time.*—A payment of principal or interest on a specialty suspends the operation of this section as to the specialty for three years after the date of payment.

"(c) *Exception.*—This section does not apply to a specialty taken for the use of the State."

Petitioner contends that its claims are based on statutory specialties because they allege violations of Maryland's Consumer Protection Act (CPA), Maryland Code (1975, 1990 Repl.Vol.), §§ 13–101 through 13–501 of the Commercial Law Article (CL). We reject that contention for the reasons set forth below.

I

The petitioner, The Greene Tree Home Owners Association, Inc. (the HOA), is a non-stock corporation organized pursuant to the Maryland Homeowners Association Act, Maryland Code (1974, 1996 Repl.Vol.), §§ 11B–101 through 11B–114 of the Real Property Article (RP). The residential community, known as Greene Tree, is located in Baltimore County and consists of forty-five buildings containing a total of 200 residential units. On May 1, 1998, in the Circuit Court for Baltimore County, the HOA sued Greene Tree Associates, a partnership that developed and sold the lots, as well as the latter's partners, Berngar Development Co., Inc. and River Oaks Construction Corporation. The HOA also sued Talles Construction Co., Inc., the general contractor on the project. These defendants impleaded Columbia Roofing, Inc., a subcontractor of Talles. The defendants and third-party defendant are appellees in this appeal and collectively shall be referred to as Respondents.

On July 8, the HOA filed an amended complaint, alleging design and construction defects in the roofs of the Greene Tree units. The amended complaint contained twenty-one common law counts, such as "negligent design" and "breach of express warranty," one allegation of breach of statutory warranty pursuant to RP § 10–203, and six counts under the

CPA. Each of the CPA counts of the amended complaint sought $8,500,000 in compensatory damages because of

"substantial injury and damage to the structure of Greene Tree, damage to the units, damage to the value of Greene Tree and the owners' units, damage from exposure to life/safety hazards, loss and/or diminishment of the peaceful use, occupancy and enjoyment of Greene Tree, damage from lost sales and/or rentals, and damage from the expenditure of funds for repairs, corrections and maintenance."

The HOA's complaint admitted that individual purchasers of units at Greene Tree reported defective roof conditions to the Respondents as early as 1986. Furthermore, in December 1992, the HOA presented an expert's report to the Respondents on the alleged roof defects. In February 1993, Respondents presented their expert's report on the condition of the roofs to the HOA. In September 1994, the parties settled concerning other alleged building defects, exclusive of the roofs. The HOA's 1998 suit concerning the roofs was filed short of twelve years after initial complaints of roof defects.

Respondents moved for partial summary judgment, arguing that, except for a single building containing six recently sold units, all of the HOA's claims were barred by limitations. With respect to the CPA claims, Respondents asserted the applicable bar to be three years under the general statute of limitations, CJ § 5–101. It reads:

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

In response, the HOA pointed to its allegations of CPA violations and to CL § 13–408(a) which reads:

"In addition to any action by the [Consumer Protection] Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title."

The HOA argued that its private cause of action under the CPA is based on a statutory specialty and that statutory specialties fall within the language, "[a]ny other specialty" in CJ § 5–102(a)(6).

The circuit court granted summary judgment in favor of the Respondents on the CPA claims, saying:

"In passing the CPA the legislative intent was to liberalize the ability of consumers to bring claims by addressing certain elements of existing causes of action that already apply to the relationship between a buyer and a seller of goods, thus relaxing the burden for consumers. However, in doing so, the Legislature did not create a new relationship between the parties, create a new cause of action, or eliminate an existing cause of action. With the exception of making actionable 'fraudulent omissions,' the CPA merely expanded the existing remedies available to the buyers of new homes under traditional contract law theories. The case at issue is simply a case which alleges faulty/defective construction. Merely because the relationship is that of buyer and seller (a relationship not created by the CPA) and the CPA concerns itself with the sale of real estate, does not create a specialty."

Thereafter, the HOA filed a voluntary dismissal without prejudice of its claims on behalf of recent purchasers, resulting in a final judgment, and the HOA appealed to the Court of Special Appeals. We granted the HOA's petition for a writ of certiorari before the Court of Special Appeals considered the appeal. In its brief on appeal the HOA presents only the issue of which period of limitations applies to its claims under the CPA.

## II

In its brief in chief the HOA argues that the General Assembly created a new cause of action by enacting the CPA. In support the HOA cites, *inter alia, Citaramanis v. Hallowell,* 328 Md. 142, 613 A.2d 964 (1992), where we said:

"Section 13–408(a) [of the CPA] provides a remedy to the consumer for many forms of misrepresentation not covered by the traditional theories of tort liability for deceit, contract actions for breach of express and implied warranties and warranties provided for under the Real Property Article and the Commercial Law Article."

*Id.* at 154, 613 A.2d at 970. The HOA further contends that this Court "has long recognized that causes of action and remedies created by statute are 'specialties' for limitations purposes." Relying principally on a test for determining whether a statute creates a specialty debt that was quoted from 1 H.G. Wood, *A Treatise on the Limitation of Actions* § 39 (4th ed. 1916) (*Wood on Limitation* ), in *Mattare v. Cunningham,* 148 Md. 309, 129 A. 654 (1925), the HOA submits that a cause of action under the CPA is new and thus a statutory specialty. Citing *Sterling v. Reecher,* 176 Md. 567, 569, 6 A.2d 237, 238 (1939), the HOA says that the principle whereby causes of action and remedies created by statutes are specialties "dates back to the original enactment of a statute of limitations by Parliament." The HOA also has furnished us with the opinions or rulings by six different circuit court judges from four different counties who concluded on the above reasoning that limitations on an action under the CPA are twelve years.

The Respondents take the position that *Mattare* and *Sterling, supra,* the only decisions of this Court holding that the actions involved were based on statutory specialties, "were based on statutes providing exclusive remedies, and like a bond or a judgment the actions did not require inquiry into the underlying facts and circumstances concerning liability." The Respondents also contend that the instant claims are essentially based on a contractual relationship, and not the CPA, that applying the twelve year statute here would create an unwarranted disparity with the three year limitations period, that applying the three year statute is consistent with the purposes of statutes of limitations generally, and that the General Assembly did not intend the twelve year statute to apply when enacting the CPA.

The statutory construction question presented here cannot be answered by looking exclusively to the words of the statute. Appropriately, both parties look to the relevant statutes of limitations as they were in effect prior to the enactment, as part of the code revision program, of the Courts and Judicial Proceedings Article by Chapter 2 of the Acts of 1973, First Special Session.

The predecessor to CJ § 5–101 was Maryland Code (1957), Article 57, § 1. It read in relevant part as follows:

" § 1.   Actions other than those upon specialties.

"All actions of account, actions of assumpsit, or on the case, except as hereinafter provided, actions of debt on simple contract, detinue or replevin, all actions for trespass for injuries to real or personal property, all actions for illegal arrest, false imprisonment ... and all actions, whether of debt, ejectment or of any other description whatsoever, brought to recover rent in arrear ... shall be commenced, sued or issued within three years from the time the cause of action accrued...."

The predecessor to CJ § 5–102 was Maryland Code (1957), Article 57, § 3. It read in relevant part as follows:

"§ 3.   Actions on bonds, judgments or other specialties....

"No bill, testamentary, administration or other bond (except sheriffs' and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever ... shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action is above twelve years' standing...."

The Revisor's Note to CJ § 5–101 advises:

"This section is new language derived from Article 57, § 1. Rather than listing the various forms of action, it is decided that a blanket three-year provision, with exceptions for other limitations, be substituted.

. . . .

"In addition, it is possible that the legislature has provided no statute of limitations for some statutory causes of action which cannot properly be considered action[s] of 'case,' 'assumpsit,' or 'contract.' Some 'modern common-law' torts (i.e., invasion of privacy), may not technically be actions on the case."

Maryland Code (1974), Revisor's Note following CJ § 5–101.

The Revisor's Note to CJ § 5–102 advises:

"This section is new language derived from Article 57, § 3. The section is reorganized to list the various types of specialties. Two types of specialties formerly appearing in § 3 are proposed for deletion; they are 'statutes merchant' and 'statutes of the staple.' If either should exist presently, it would be included as 'any other specialty' so [that] the section does not impair any 'obligation of contract.' "

Based on the Revisor's Note to § 5–101, the Respondents argue that applying a twelve year bar to CPA actions would be inconsistent with the Legislature's understanding at the time of the 1974 Code revision that statutory causes of action for which no specific limitations period is provided would be subject to the general three-year statute of limitations.

In its reply brief the HOA counters this argument by reference to Report No. 3F, dated July 16, 1973, of the Governor's Commission to Revise the Annotated Code (the Commission). There, in discussing proposed § 5–101 the Commission said:

"Many of the types of action listed in the present statute [Art. 57, § 1] are either obsolete or obscure.... It was felt that many lawyers may not be aware of the distinctions inherent in the ancient forms of action such as between trespass, case, and assumpsit.... It is possible that in enacting some modern statutory causes of action which do not fit within the old forms of action, the legislature may have neglected to provide specific statutes of limitation. In light of the above, it was felt that a general three year provision, with exceptions for actions not falling within the three year period, would be an improvement."

CJ § 5–102 provides exceptions to the general three year rule. In Report No. 3F, the Commission also said that proposed § 5–102 "retains the forms of action (specialties) in order to avoid making substantive changes." Thus, the Revisor's Notes and the Commission Report do not directly answer the question that is before us. They inform us, however, that, if a CPA action is not an "other specialty" within the meaning of CJ § 5–102(a)(6), it would be governed by § 5–101.[1] The Revisor's Notes and Commission Report further inform us that, in order to determine whether this CPA action is a statutory specialty, preserved as an "other specialty" under CJ § 5–102(a)(6), we must look to the forms of action as they existed at common law.

### III

Before addressing the judicial decisions, both in this country and in England, that have been concerned with statutory specialties in the limitations context, it is helpful to review certain forms of action at common law and also the language of the statutes of limitations under which statutory specialty cases have been decided.

Many of the cases involving issues of statutory specialty are actions of debt, using that term in the common-law-pleading, form-of-action sense. Poe explains the difference between debt, covenant, and assumpsit as follows:

"Assumpsit lay for the recovery of *damages* for the breach of a *parol* or *simple* contract. For example, a contract to build a house. Covenant lay to recover *damages* for the breach of a contract *under seal.* For example, a contract

---

**1.** The CPA was first enacted by Chapter 388 of the Acts of 1967. The private remedy provision was added by Chapter 704 of the Acts of 1973, effective July 1, 1973. CJ §§ 5–101 and 5–102 were part of the adoption of the Courts and Judicial Proceedings Article by Chapter 2 of the Acts of 1973, First Special Session, which was effective January 1, 1974. *See* 1973 Md. Laws, First Special Session, at 431. Consequently, the General Assembly enacted the private remedy provisions of the CPA before CJ § 5–101 was enacted as a "catch all" for actions based on statutes that internally did not provide a period of limitations.

*under seal* to build a house; or a policy of fire insurance *under seal.* Debt lay for the recovery of a specific and liquidated sum, whether the indebtedness was evidenced by an obligation with or without seal, verbal or written, express or implied. For example, a bond for a precise amount; a foreign or domestic judgment; the penalty given by statute and the like. In debt, the specific sum due was always claimed as a *debt;* and although, at the end of the declaration, damages were claimed, they were usually nominal, being simply for the detention of the debt, and were commonly covered by an allowance for interest. In assumpsit and covenant, on the other hand, the claim technically was always for *damages.*"[2]

1 J.P. Poe, *Pleading and Practice in Courts of Common Law* § 63, at 39 (Tiffany 5th ed.1925) (footnote omitted).

Poe further describes when debt would lie.

"From a very early date [debt] was the appropriate action to recover a penalty prescribed by Act of Parliament, at the suit either of the party grieved or of a common informer, in all cases where no particular action was named; and so it lies with us in all cases to recover fines and penalties imposed by statute, either when the statute names it, or names no action whereby the sum given, or penalty or forfeiture prescribed, may be sued for. It lies also to recover the sum due upon judgments or decrees, whether domestic (that is of Courts of other States, Districts or Territories of the Union) or foreign, for the *payment of money.* It is an appropriate action also upon forfeited recognizances.... It is the proper action, also, to recover the sum due upon bonds, obligations under seal or any other specialties for the payment of a designated amount of

---

**2.** Chapter 392 of the Acts of 1918 abolished, for pleading purposes, the distinction between debt, covenant, and assumpsit. Thereafter, and until the creation in 1984 of "one form of action known as 'civil action'" by Maryland Rule 2–301, the actions of debt, covenant, and assumpsit were merged in assumpsit.

The statute of limitations for suits for penalties is now one year after the offense was committed. *See* CJ § 5–107.

money, even though the bonds are with collateral conditions; and, indeed, it is the usual and familiar remedy in our courts upon bonds conditioned for the faithful performance of official or other duty, or for the payment of a certain sum of money by way of penalty. . . . In all these classes of cases, viz: on statutes, judgments and decrees, and sealed instruments for the payment of a sum certain of money, even though subject to conditions, it is the *only* appropriate remedy. It also lies upon every contract, express or implied, to pay a sum certain, whether the contract be verbal or written. Also, upon awards for the payment of money. . . . The only limitation now upon the applicability of this action in cases of contract, express or implied, verbal or written, parol or under seal, is the fundamental one—that the *sum claimed shall be certain, or capable of being readily made certain* . . . ."

*Id.* § 138, at 98–99 (last emphasis added; footnotes omitted).

The historical background of former Article 57, §§ 1 and 3 also should be briefly stated. The relevant portion of former Article 57, § 1 took the form in which it was quoted in Part II, *supra,* by Chapter 73 of the Acts of 1861. The relevant portion of the twelve year statute, former Article 57, § 3, took the form in which it was quoted in Part II, *supra,* by the adoption of the Code of 1888 where the provision also was Article 57, § 3. Significantly, both the three year and the twelve year statutes trace to a common source, the Acts of 1715, Chapter 23.[3] The three year provision of the 1715 statute referred to specialties by way of exclusion, in that "all actions of debt for lending, or contract without specialty" were subject to a three year bar. In the twelve year provision of the 1715 statute, specialties were referred to by way of inclusion, inasmuch as the twelve year period applied to any "bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever."

---

**3.** The 1715 statute is set forth in relevant part in the appendix to this opinion.

This colonial era, Maryland statute substituted for, and enlarged upon, the original British statute of limitations, 21 Jam. 1, ch. 16, § 3 (1623).[4] The statute of James, like the three year section of the 1715 Maryland statute, excluded specialties from the bar which applied to "all Actions of Debt grounded upon any Lending or Contract without Specialty." No period of limitations was fixed by the statute of James for actions on specialties.[5] The Civil Procedure Act, 1833, 3 & 4 Will. 4, ch. 42, § 3, established a twenty year period of limitations for certain actions, including "all actions of covenant or debt upon any bond or other specialty." [6] The 1623 and 1833 British statutes were repealed by the Limitation Act, 1939, 2 & 3 Geo. 6, ch. 21. That enactment did not use, and likely intentionally avoided, the term "specialty." It established a period of limitations of six years on "actions to recover any sum recoverable by virtue of any enactment, other than a penalty or forfeiture or sum by way of penalty or forfeiture." *Id.* § 2(d).

A number of states in the United States enacted statutes of limitations that were patterned on the 1623 British statute. As a result, decisions of this Court, and of other American courts, when trying to identify a statutory specialty, have looked to both American and English decisions.

## IV

The earliest statement by this Court giving an example of a statutory specialty appears in *Ward v. Reeder*, 2 H. & McH. 145, 154 (1789), where the Court commented, "An action grounded upon a statute, cannot be barred; such as debt for

---

**4.** 21 Jam. 1, ch. 16, § 3 is set forth in the appendix.

**5.** There was, however, a common law presumption that an obligation had been paid or satisfied after the lapse of twenty years. *See Lynch v. Rogers*, 177 Md. 478, 486, 10 A.2d 619, 623 (1940); *see also Lane v. Morris*, 10 Ga. 162, 170 (1851); J.K. Angell, *A Treatise on the Limitations of Actions at Law* § 93, at 92 (6th ed. 1876).

**6.** The Civil Procedure Act, 1833, is reproduced in the appendix.

an escape, etc." [7]  The example refers to the Statute of Westminster, 13 Edw. 1, ch. 11 (1285), and to 1 Rich. 2, ch. 12 (1377).  During the centuries when imprisonment for debt was permissible, the jailer who allowed a debtor to escape became liable to the judgment creditor for the debt.  Prior to the enactment of these statutes, there was a common law action on the case for escape in which the defendant jailer could offer evidence in mitigation of damages.  *See State ex rel. Creecy v. Lawson,* 2 Gill 62, 71 (1844).  The statute of Richard in part provided that "if any such Warden from henceforth be attainted by due Process, that he hath suffered or let such Prisoner to go at large against this Ordinance, then the Plaintiffs shall have their Recovery against the same Warden by Writ of Debt."  An action on this statute was a specialty and not within 21 Jam. 1, ch. 16, § 3. *Jones v. Pope,* 85 Eng. Rep. 45, 52 (1666).  The statute of Richard was in force in Maryland until imprisonment for debt was abolished by the Maryland Constitution of 1851, Article III, § 44.  *See* 1 J.J. Alexander, *British Statutes in Force in Maryland* 243 (Coe 2d ed.1912).

In *State ex rel. Creecy,* this Court described the operation of the two British statutes as follows:

"[The action on the case] was the only remedy a plaintiff had at common law, until the Statute of West. (13th Ed. 1, ch. 11,) and 1 R. 2, ch. 12.  These statutes first gave the action of debt against a gaoler or sheriff for an escape.  Where this remedy is employed under the statutes, the sheriff is put in the same situation in which the original debtor stood, and the jury cannot give a less sum than the creditor would have recovered against the defendant in the original suit."

2 Gill at 71.

Chief Judge Bond, writing for the Court in *Sterling v. Reecher,* 176 Md. 567, 6 A.2d 237, gave the following explanation for treating suits grounded on statutes as specialties:

---

**7.**  The action in *Ward* was in replevin, brought by a legatee under a decedent's will against the executor.  The report does not indicate that any statute was the predicate for the plaintiff's claim.

"Since shortly after the enactment of the English statute of limitations on actions, 21 James 1, chapter 16, suits grounded on statutes have been held to be *in debt* on records of the highest rank, those of acts of Parliament, and hence specialties."

*Id.* at 569, 6 A.2d at 238 (emphasis added). Citing *Ward*, 2 H. & McH. at 154, the Court in *Sterling* referred to " 'debt for an escape' " under the statute of Richard as an illustration of a statutory specialty. *Sterling*, 176 Md. at 569, 6 A.2d at 238.

*Mattare v. Cunningham*, 148 Md. 309, 129 A. 654 (1925), held that a workers' compensation award, made in this State, was a statutory specialty. *Id.* at 316, 129 A. at 656–57. The Court quoted from two sources for the characteristics of a statutory specialty. The first was *Wardle v. Hudson*, 96 Mich. 432, 55 N.W. 992 (1893):

" 'Specialty by statute means some right or cause of action given by statute which does not exist at common law. In such cases the nature or cause of action does not depend, in any degree, upon any contract relation. There is no original obligation whatever created by the act of the parties.' "

*Mattare*, 148 Md. at 314–15, 129 A. at 656.

This Court in *Mattare* also quoted the following passage from *Wood on Limitation* § 39, at 137–38, where the author was speaking of statutes of limitations patterned on 21 Jam. 1, ch. 16:

" 'The test, whether a statute creates a specialty *debt* or not, might be said to be whether, independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether independently of the statute a right of action exists for the breach of the duty or obligation imposed by the statute. If so, then the obligation is not in the nature of a specialty, and is within the statute [of limitations], so long as the common-law remedy is pursued; but if the statute creates the duty or obligation, then the obligation thereby imposed is a specialty, and is not within the statute [of limitations]. If the statute imposes an obligation, and gives a special remedy therefor, which other-

wise could not be pursued, but at the same time a remedy for the same matter exists at common law independently of the statute, and the statute does not take away the common-law remedy, the bar of the statute [of limitations] is effectual when the common-law remedy for the breach of the common-law duty or liability is pursued, but is not applicable when the special statutory remedy is employed.' "

*Id.* at 315, 129 A. at 656 (emphasis added). Wood cites two authorities for his test, *Bullard v. Bell,* 4 F. Cas. 624 (C.C.D.N.H.1817) (No. 2,121), and *Robertson v. Blaine County,* 90 F. 63 (9th Cir.1898). Both decisions are considered, *infra.*

The Court in *Mattare,* rejecting the employer's argument that the suit on the award was an enforcement proceeding and distinguishable from the statutory workers' compensation remedy, said:

"The proceeding before the commission was created by statute, had its foundation therein, and had for its purpose the compelling of payment by the employer ... [of] compensation for the injury or death. The suit upon the award, which is the approved and proper method of enforcing the award of the commission, is simply compelling the full and complete performance by the employer of the obligation imposed by the statute. We think that reason and authority are conclusive upon the point, that the award of the Industrial Accident Commission is a specialty, within the meaning of section 3 of article 57 of the Code...."

*Id.* at 316, 129 A. at 656–57. Although the arguments and opinion in *Mattare* focused on the debated nexus between the action on the award and the liability imposed by the workers' compensation statute, it is clear that the claim was for a fixed sum.

*Mayor and City Council of Baltimore v. Household Finance Corp.,* 168 Md. 13, 176 A. 480 (1935), involved a claim for a tax refund under a statute that "changed the common law rule that taxes paid under a mistake of law could not be recovered." *Id.* at 14, 176 A. at 481. The City argued that

the suit was barred by the general, three year period of limitations, Article 57, § 1, while the taxpayer, relying on *Mattare,* argued that the refund statute made the claim a specialty. The Court held that the claim was not on a specialty.

In concluding that former Article 57, § 1 governed, and not § 3, the Court necessarily had to decide the form of action that was presented, because those statutes expressed the applicable limitations in the language of common law pleading. The Court held that the action was assumpsit, relying on the analysis by the Supreme Court of the United States in *Metropolitan R.R. Co. v. District of Columbia,* 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889).

The District of Columbia statute of limitations involved in *Metropolitan R.R. Co.* was the 1715 Maryland statute. The action in that case was brought by the District of Columbia to recover the cost of maintaining that portion of public streets within a specific distance outside of the rails of the defendant, a street railway company. The Act of Congress under which the defendant was incorporated placed that maintenance obligation on the street railway. Reversing a judgment in favor of the plaintiff, the Supreme Court held that the action was not a statutory specialty and was barred. This Court in *Household Finance* quoted the following reasoning of the Supreme Court:

" 'The court below, in its opinion on the demurrer, suggests another ground, having relation to the form of the action, on which it is supposed that the plea of the statute of limitations in this case is untenable. It is this: that the action is founded on a statute, and that the statute of limitations does not apply to actions founded on statutes or other records or specialties, but only to such as are founded on simple contract or on tort. We think, however, that the court is in error in supposing that the present action is founded on the statute. It is an action on the case upon an implied assumpsit arising out of the defendant's breach of a duty imposed by statute, and the required performance of that duty by the plaintiff in consequence. This raised an implied

obligation on the part of the defendant to reimburse and pay to the plaintiff the moneys expended in that behalf. The action is founded on this implied obligation, and not on the statute, and is really an action of assumpsit. The fact that the duty which the defendant failed to perform was a statutory one does not make the action one upon the statute. The action is clearly one of those described in the [three years portion of the 1715] statute of limitations.' "

168 Md. at 17–18, 176 A. at 482 (quoting *Metropolitan R.R. Co.*, 132 U.S. at 12–13, 10 S.Ct. at 23, 33 L.Ed. at 236).

*Household Finance* was decided on the lack of a nexus between the refund statute and the claim asserted, by distinguishing between an action on the statute and an action for breach of the duty created by the statute. The *Household Finance* Court, by its own admission, was influenced by the anomaly that would result if refund claims based on mistake of law enjoyed a twelve year period of limitations while refund claims based on mistake of fact would be barred after three years. *Id.* at 18, 176 A. at 482.

Inasmuch as we shall not decide the case before us on nexus grounds, we need not opine, in this matter, on the reach of the holding in *Household Finance.* It is sufficient to note that *Household Finance* is consistent with viewing the refund statute as having expanded the common law restitutionary remedy for money paid under mistake of fact, that is, an expansion of the action for money had and received, a form of assumpsit and not of debt.

*Sterling v. Reecher,* 176 Md. 567, 6 A.2d 237, is an example of a type of statutory specialty on which a number, but not all, of the decisions agree, namely, the statutory imposition of liability on the shareholders of a defunct bank to pay the debts of the bank up to some limitation on a stockholder's individual liability. The action in *Sterling* arose under Maryland Code (1924), Article 11, § 72, enacted by Chapter 219 of the Acts of 1910, § 68. In relevant part it provided:

"Stockholders of every bank and trust company shall be held individually responsible, equally and ratably, and not

one for another, for all contracts, debts and engagements of every such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock."

Standing to bring an action based on this statutory liability was limited to a receiver, assignee, or trustee acting under the jurisdiction of a court. In a receiver's action under the statute the defendant stockholder pled the three year statute of limitations. The twelve year statute was held to apply because the action was based on a statutory specialty.

This Court recognized the analytical difficulty of identifying a specialty by virtue of the nexus between the cause of action and the statute on which it is based:

"And suits upon [statutes] are not within the original act [*i.e.,* the three year statute of limitations] providing the limitation on actions on simple contracts.... But the element of contract in a subscription to stock, upon which the statute of Maryland lays the double liability, has produced uncertainty in the classification of suits to recover it. Are they grounded on contract or on the statute?"

*Id.* at 569, 6 A.2d at 238 (citations omitted).

Attempting to state a general rule, the Court further wrote:

"It has been held generally that when the statute creating a liability provides the remedy and allows no other, then the remedy could be only that provided, and it would be grounded on the statute, necessarily, but that a common law action of debt might lie either when such an action is given by the statute or when the statute provides for the payment of a sum of money but does not mention any mode of recovering it."

*Id.* at 570, 6 A.2d at 238. The holding in *Sterling* is essentially that there was a sufficient nexus between the statute and the action to create a specialty. Factors on which the Court relied included that the remedy was exclusive, that the 1910 bank statute had taken enforcement of the remedy from creditors and placed it with the receiver, that the new statute established liability directly to the bank, and that stockholders

covered by the statute were those as of the date of the receivership and not as of the date when the bank's debts were contracted. *Id.* at 570–71, 6 A.2d at 239.

Under the 1910 Maryland statute, it appears that the liability of a bank's shareholder was for a readily determinable amount. Once the deficiency in the receivership estate was established by the court administering the receivership, the deficiency was divided by the number of outstanding shares in the bank as of the date of the receivership, producing a quotient that, when multiplied by the number of shares held by any given stockholder, produced that stockholder's liability, up to a cap equal to the total par value of the shares held by that stockholder.

*Insurance Commissioner v. Wachter, Hoskins & Russell, Inc.*, 179 Md. 608, 21 A.2d 141 (1941), is a case in which the nexus between a statute and the claim asserted was insufficient to create a specialty. The action was brought by the statutory liquidator of an insolvent Pennsylvania mutual insurance company in which policyholders were assessable for losses in addition to their obligation to pay premiums. Policies initially issued by the company did not disclose the contingent liability for assessments, but in 1929 Pennsylvania enacted a statute requiring disclosure and limiting the amount of any assessment against an individual policyholder to an amount equal to one year's premium. Because almost 5,000 Maryland residents were potentially subject to assessment, the Court in *Wachter* considered, in *dicta*, whether the liquidator's claims would be governed by the three year or twelve year period of limitations. Because the policyholders' liability for assessments rested on the contract of insurance and not on the 1929 Pennsylvania statute that was intended to limit that liability, the three year statute applied. *Id.* at 624–25, 21 A.2d at 149–50.

Similar to *Sterling* is *Bullard,* 4 F. Cas. 624, an opinion of Justice Story on circuit. The special legislative charter of a bank provided that its stockholders would be liable for the payment of any dishonored bank notes issued by the bank.

An action in debt was brought by the holder of a ten dollar bank note against a bank stockholder after the bank had failed to pay the note on presentment. The New Hampshire statute of limitations was "a mere transcript of" the statute of 21 Jam. 1, ch. 16, § 3. *Id.* at 638. To the defendant's plea of limitations, based upon that statute, the plaintiff demurred. It was held that the action was founded on the statute incorporating the bank, which the law deemed a specialty for limitations purposes. *Id.* at 639. Consequently, the demurrer was sustained to the plea. Under the rules of common law pleading, however, the demurrer mounted to the first error, so that the stockholder also contended that the claim did not lie in debt.

*Bullard* is one of the two cases cited by *Wood on Limitation* § 39 as support for the test for determining a statutory specialty that was repeated by this Court in *Mattare,* 148 Md. at 315, 129 A. at 656. In a footnote to § 39, Wood sets forth a lengthy quotation from Justice Story's opinion. That quotation is taken from the portion of the *Bullard* opinion explaining why the action of debt was an appropriate form of action in that case. Significant for present day purposes in Maryland is that *Bullard* in fact involved a claim for a liquidated sum.[8]

For other decisions involving claims for determinable sums and holding that a provision in a special legislative charter making stockholders liable for corporate debts creates a specialty, see *Thornton v. Lane,* 11 Ga. 459, 498, 502 (1852) (action to enforce shareholder's ultimate liability to redeem bank notes); *Lane v. Morris,* 10 Ga. 162, 170 (1851) (action of debt to enforce liability to redeem bank notes); *Van Hook v.*

---

8. We do not suggest that there is no common law precedent for an action on a statute other than an action in debt. For example, Justice Story states, "[U]pon the statute of hue and cry (13 Edw. I. St. 2, cc. 1, 2), which makes the hundred 'answerable for the robberies done and the damages,' an action on the case, and not an action of debt, lies for the party grieved; for the cause sounds properly in damages." *Bullard,* 4 F. Cas. at 639. But not every action on a statute is a statutory specialty. The question before this Court is whether basing the instant action on the CPA makes it an action on a specialty for limitations purposes.

*Whitlock,* 3 N.Y. Ch. Ann. 209 (1832) (statute that tracks 21 Jam. 1, ch. 16, § 3 does not extend to an action of debt against the stockholders of a corporation founded upon a statutory liability); *Atwood v. Rhode-Island Agricultural Bank,* 1 R.I. 376, 390 (1850) (equity jurisdiction because of contribution claims between shareholders; equity follows law on limitations; if action were debt, it would not be barred by statute of limitations worded like statute of James); *Cork & Bandon Ry. Co. v. Goode,* 138 Eng. Rep. 1427 (1853) (action of debt).[9]

The position taken by the foregoing shareholder liability cases is by no means uniform. For example, *Carrol v. Green,* 92 U.S. 509, 23 L.Ed. 738 (1876), involved an equity suit by creditors of a defunct bank. The legislative charter of the bank imposed liability on individual stockholders for any sum not exceeding twice the amount of the stockholder's shares. Applying a South Carolina enactment of 1712 that was much like the Maryland statute of 1715, the Supreme Court held that the action was not one on a statutory specialty. In its principal rationale the Court viewed the legislative charter provision as forming part of the contract made between a shareholder and the issuing bank when an individual shareholder subscribed for stock. Under that view the action was based on the contract and not on the statute. *Id.* at 513, 23 L.Ed. at 740.

Just as stockholder liability cases reflect a difference in analysis, for statutory specialty purposes, on the nexus between a statute and a claim based on it, so also do minimum wage claim cases. In *Bright v. Hobbs,* 56 F.Supp. 723 (D.Md.

---

**9.** *Cork & Bandon Ry. Co.* is the subject of a Note, *Limitation of Actions—Actions on a Statute,* 10 Australian L.J. 102 (1936). From the case under consideration in the note, and other English decisions, the author concludes that

"an action is an action on a statute when the substantive law giving the cause of action is entirely statutory and does not require to be eked out by the common law, i.e., when it is not merely a common law action for breach of contract (the contract, or the particular term thereof which is sued upon, deriving efficacy from a statute) or a common law action for tort (the breach of duty being the breach of a statutory duty)."

1944), and in *Manhoff v. Thomsen–Ellis–Hutton Co.*, Daily Record, Mar. 17, 1943 (Balto. City Cir. Ct. Mar. 15, 1942), Judges William Coleman and Eli Frank respectively held that claims for minimum wages and overtime were statutory specialties because the Fair Labor Standards Act created obligations additional to, and different from, those under the contract of employment. A similar analysis is found in *Pratt v. Cook, Son & Co. (St.Paul's)*, [1940] 1 All E.R. 410 (H.L. 1940), involving an 1831 Act of Parliament that prohibited payment of the wages of a manual worker in other than current coin. For fifteen years the defendant deducted ten shillings per week from the plaintiff's wages, representing the value of tea and dinner that the employer had furnished. With one dissent, the court held that the action was based on a statutory specialty because the statute made null and void the employment contract provision under which food was substituted for wages. Consequently, the action could not proceed but for the statute.

The United States Court of Appeals for the Fourth Circuit took the opposite approach on limitations applicable to a Fair Labor Standards Act claim in *Roland Electrical Co. v. Black*, 163 F.2d 417 (4th Cir.1947). Maryland limitations governed the issue. Judge Morris Soper, speaking for the court, reviewed the decisions of this Court on statutory specialties and concluded that the claim was not one on a statutory specialty for the following reason:

> "We think that the provisions of the Act with reference to minimum wages, overtime compensation and liquidated damages are read into and become a part of every employment contract that is subject to the terms of the Act. The liability of the employer is for the wages due under working agreements which the federal statute compels employer and employee to make."

*Id.* at 426. A similar result was reached by the English Court of Appeal in *Gutsell v. Reeve*, 154 L.T.R. 1 (C.A.1935), where a minimum wage statute was viewed as having amended the employment contract and substituted the statutory rate of wages for the contract rate. Consequently, the employee did

not enjoy the extended limitations period of twenty years for an action of debt on a statute under § 3 of the Civil Procedure Act, 1833.

The conflict on the nexus issue in the wage and hour cases was resolved in Maryland by the General Assembly with Chapter 518 of the Acts of 1945, which established the three year period of limitations.[10] In any event, under either line of cases the wage claim was for a determinable sum.

The second decision quoted in the footnote to § 39 of *Wood on Limitation* to support the test therein proposed for determining "whether a statute creates a specialty debt or not" is *Robertson*, 90 F. 63. That case involved an act of the Idaho legislature that consolidated two counties into a new county. The latter was sued to recover the principal and interest on bonds that had been issued for courthouse construction by one of the counties extinguished in the consolidation. A provision of the consolidation statute made the new county liable for all legal indebtedness of a predecessor county. The court held that "[t]his debt, or obligation ... is in the nature of a specialty." *Id.* at 66.

For other statutory specialties, *see City of Philadelphia v. Atlantic & Pac. Tel. Co.*, 109 F. 55, 55 (E.D.Pa.1901) (ordinance imposing liability for license fees in respect of poles and wires was a statutory specialty because, *inter alia*, prior to the abolition of covenant, debt, and assumpsit as forms of action, "the action of debt would have been the appropriate remedy to recover these fees"); *Outwater v. City of Passaic*, 51 N.J.L. 345, 18 A. 164 (1889) (former city treasurer's claim for unpaid salary fixed by ordinance at $400 per year was statutory specialty).

---

**10.** Chapter 518 of the Acts of 1945 was formerly codified as Maryland Code (1957), Article 57, § 19. By the Portal–to–Portal Act of 1947, Congress imposed a two year statute of limitations for claims brought under the Fair Labor Standards Act. *See* Pub.L. No. 80–49, 61 Stat. 84, 87–88 (codified as amended at 29 U.S.C. § 255(a) (1994)). The Maryland General Assembly deleted § 19 in code revision. See 1973 Md. Laws, First Special Session, at 388, 391.

Also instructive is *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969), dealing with an "instrument of record" limitations argument. In that case the plaintiffs owned a tract of land which the defendant, a surveyor, had platted for subdivision. When the county refused to permit as many lots on the tract as the plats had shown, the plaintiffs sued the surveyor for damages. In response to a limitations defense, the plaintiffs asserted that, because the plats were duly recorded with the clerk of the circuit court, the action was one on a specialty. In support the plaintiffs cited § 29 of *Wood on Limitation*, where the author, quoting *Bacon's Abridgement*, said: " ' "All instruments under seal, of record, and liabilities imposed by statute are specialties." ' " *Mattingly*, 254 Md. at 97–98, 253 A.2d at 909. Rejecting the plaintiff's argument, this Court said:

> "There is a paucity of authority on what the term 'instruments * * * of record' may mean, in the context of its usage by *Wood*, but we think it is meant to extend to judgments, recognizances, security for costs or a supersedeas and not to every document of contemporary times that happens to be placed on record in the office of a clerk of a court of record.
>
> "One must be impressed by the fact that under the general classification of specialties the text writers and cases all speak of specialties as grounded on some type of obligation set forth in the instrument.
>
> . . . .
>
> "In Vol. 39A *Words and Phrases* at 385, we find a discussion on specialties which states: ' * * * The term has long been used in England and America as embracing debts on recognizances, judgments, and decrees, and in England certainly debts upon statute; * * *.' "

*Id.* at 98–99, 253 A.2d at 909–10 (footnote omitted; star ellipses in original).

The close relationship over the centuries between statutory specialties and the form of action of debt strongly indicates that a claim for unliquidated damages is not one based on a statutory specialty. Here, of course, the damages sought by

the HOA under the CPA will involve the cost of cure, diminution in value, and loss of rental income. These claims are not for fixed or determinable sums.

## V

Countering the Respondents' argument that an action on a statutory specialty is one that necessitates only a limited inquiry into the underlying facts in order to establish liability, the HOA looks to CJ § 5–102(a) in its entirety and in effect argues that it does not reflect a consistent pattern. The HOA correctly points out that a full factual inquiry may be required to determine liability on a claim based on a well recognized form of specialty, the contract under seal.

From the standpoint of damages, and whether those sought are liquidated or unliquidated, a promissory note, a bond, a judgment, and a recognizance will involve a fixed or determinable sum.[11]  On the other hand, we have held that an action for unliquidated damages based on the failure of a title insurer to defend the insured's title as promised in a policy under seal was an action governed by the twelve year statute. *Gildenhorn v. Columbia Real Estate Title Ins. Co.*, 271 Md. 387, 406, 317 A.2d 836, 846 (1974).  If, however, the unit of consideration is limited to claims embraced by "[a]ny other specialty" as the words are used in item (6) of CJ § 5–102(a), rather than considering all six items listed in that subsection, then there is uniformity in the liquidated nature of the damages.

From 1715 to 1974 the twelve year portion of the Maryland statute of limitations listed neither statutory specialties nor contracts under seal as separate types of specialties ("bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever").  In the recodification effective January 1, 1974, contracts under seal were removed from "other specialty" and separately identified.  At the same

---

**11.**  A recognizance is "an obligation of record, entered into before a court or officer duly authorized for that purpose, with a condition to do some act required by law, which is therein specified."  2 J. Bouvier, *Law Dictionary* 416 (3d ed. 1848).

time the express references to "statute merchant, or of the staple" in Md.Code (1957), Article 57, § 3 were deleted and, if extant, those specialties were intended to be covered by CJ § 5–102(a)(6), "[a]ny other specialty." *See* Md.Code (1974), Revisor's Note following CJ § 5–102. Thus, statutes merchant and of the staple are the only examples to which we have been directed of the company that statutory specialties may have under the heading "[a]ny other specialty" in CJ § 5–102(a)(6). From these examples we can test for compatibility with a rule that this subsection excludes claims for unliquidated damages.

In the first of his fourteen volume history of the law of England, Sir William Holdsworth describes the development of the "law merchant." 1 W.S. Holdsworth, *A History of English Law* 526–44 (7th rev. ed. 1956) (Holdsworth). Stated in a concise and exceedingly simplified manner, the law merchant was a body of law governing commercial transactions, which originated in specialized courts in the commercial centers of Europe, and in close connection with maritime law. This law constituted an international law, or "species of *jus gentium*," as distinct from the law of a particular town or state. *Id.* at 529. That part of the law merchant concerning foreign trade was administered, in England, by "the courts of the Staple," in "certain towns, known as the Staple towns, [which] were set apart." *Id.* at 540, 542. In essence, the Staple system of towns and specialized courts, which applied the law merchant, protected foreign merchants dealing in such "staples" as wool or leather from the protectionist and prejudicial practices of local towns or guilds. *Id.* at 542–43.

The judicially created law merchant was supplemented by statute. The first pertinent statute is the *Statutum de Mercatoribus*, 11 Edw. 1 (1283). This statute provides in pertinent part:

"For as much as Merchants, which heretofore have lent their Goods to divers Persons, be greatly impoverished, because there is no speedy Law provided for them to have Recovery of their Debts at the Day of Payment assigned; (2) and by reason hereof many Merchants have withdrawn

to come into this Realm with their Merchandizes, to the Damage as well of the Merchants, as of the whole Realm; (3) the King by himself and by his Council hath ordained and established, that the Merchant which will be sure of his Debt, shall cause his Debtor to come before the Mayor of London, or of York, or Bristol, or before the Mayor and a Clerk (which the King shall appoint for the same) for to knowledge the Debt and the Day of Payment; (4) and the Recognisance shall be entered into a Roll with the Hand of the said Clerk, which shall be known. (5) Moreover, the said Clerk shall make with his own Hand a Bill obligatory, whereunto the Seal of the Debtor shall be put, with the King's Seal . . .: (6) And if the Debtor doth not pay at the Day to him limited, the Creditor may come before the said Mayor and Clerk with his Bill obligatory; (7) and if it be found by the Roll, and by the Bill, that the Debt was knowledged, and that the Day of Payment is expired, the Mayor shall incontinent cause the Moveables of the Debtor to be sold . . . until the whole Sum of the Debt; and the Money, without Delay, shall be paid to the Creditor."

A similar statute, titled *The Statute of Merchants*, was passed two years later. *See* 13 Edw. 1, Stat. 3 (1285). The next pertinent statute, titled *Statutum de Sapulis*, 27 Edw. 3, Stat. 2 (1353), organized generally the staple system, and in particular provided a similar procedure of acknowledgment of a debt before the staple courts. Eventually, however, by the end of the seventeenth century, the law merchant in both its domestic and foreign aspects became incorporated in the general common law, thereby exerting some influence on the latter. *See* 1 Holdsworth at 568–73.

In sum, both a "statute merchant" and a "statute of the staple" provided a procedure for a debtor to acknowledge his debt before an official body, and, if the debtor defaulted, for the creditor to revisit that body and petition it to execute on the debtor's property in order to satisfy the debt. As suggested by the term "Recognisance," found in the 1283 statute, the "statute merchant" and "statute of the staple" procedure is essentially that of a civil recognizance.

VI

At oral argument in this Court the HOA urged a public policy construction of CJ § 5–102(a)(6), arguing that the statutory warranties applicable to new residential dwellings provide an inadequate period of time within which to discover defects. Were we to hold, however, that an action based upon the CPA is one based on a statutory specialty, the holding would apply to any action that might be brought under the CPA. From a public policy standpoint, the result urged by the HOA is inconsistent with the purpose of the distinction between the three year and the twelve year statutes of limitations.

We agree with the rationale in *Roland Electrical Co.*, 163 F.2d at 424, where the court said:

"[I]t is significant that actions, such as trespass, trover, contract and slander, in which the fullness of time weighs heavily against the preservation of the evidence that frequently depends upon imperfect memory or informal writings, are found in the three year category, while actions on formal instruments or records, such as bonds, judgments and recognizances are subject to the twelve year period. The distinction undoubtedly relates to the reliability and durability of the evidence by which the varying causes of action must be established, and from this general viewpoint, there can be no doubt that suits for wages under the Fair Labor Standards Act, generally based on unwritten contracts, are in the same class as ordinary suits on wage contracts which are barred in three years after the right of action accrues."

Claims based upon the CPA may involve not only unwritten contracts, but, quite frequently, oral misrepresentations as well. It is consistent with the types of claims embraced by CJ § 5–101 to include claims based on the CPA within that section.

Indeed, it appears that an action based on the CPA is, in the terminology of the forms of action, an action on the case. In *Thomson v. Lord Clanmorris*, [1900–3] All E.R. 804 (C.A. 1900), an action had been brought under the Directors' Liabili-

ty Act, 1890, alleging that a prospectus for gold mining stock contained untrue statements. The issue was whether, under § 3 of the Civil Procedure Act, 1833, the action was one of "debt upon any bond or other specialty" and subject to a twenty year limitations period or whether it was an action "for penalties, damages, or sums of money given to the party grieved by any statute" and subject to a six year limitations period. The opinion of Lord Justice Vaughn Williams described the effect of the Directors' Liability Act, 1890, as follows:

> "It really creates a new negative duty. These persons, be they directors, or promoters, or whatever class they come under which is included in this section, have really cast upon them a new duty in respect of prospectuses and similar notices.... Speaking generally, one may say that this Act of Parliament creates a new statutory duty as to accuracy— a new statutory duty to abstain from inaccurate and untrue statements. Then, in effect, it gives a new action on the case to those persons who may have been injured by the neglect of that statutory duty."

*Thomson*, [1900–3] All E.R. at 808. Lord Justice Williams then addressed an argument by the plaintiff, based upon the *Cork & Bandon Railway Co., supra*, in which a statute providing for calls on stockholders to supply additional funds in order to meet the debts of the corporation was held to create a statutory specialty. He said that that case

> "was an action for a statutory debt, and the sole question there was whether that debt was within the terms of the Limitation Act, 1623, founded on specialty or not.... In the present case it seems to me that you have merely a new duty created of accuracy in respect of the preparation and issue of prospectuses, and an action on the case given to those persons who are injured by it."

*Id.*

## VII

■ It appears from both the American and English cases that attempts to identify a statutory specialty by defining the

nexus between a claim and the statute at issue have led to complexities and, arguably, conflicting results. *See Sterling*, 176 Md. at 569, 6 A.2d at 238 (acknowledging the difficulty of this mode of analysis). It further appears from both the American and English cases that statutory specialties usually have involved an action of debt for a fixed or determinable sum. For these reasons, we shall not attempt to state an all-encompassing definition of a statutory specialty. In the case before us it is sufficient to hold that a statutory specialty does not lie for unliquidated damages, and we so hold. Accordingly, the judgment of the Circuit Court for Baltimore County is affirmed.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, THE GREENE TREE HOME OWNERS ASSOCIATION, INC.*

**APPENDIX**

Chapter XXIII of the Acts of 1715 reads in relevant part as follows (using the modern form of the letter "s"):

"FORASMUCH as nothing can be more essential to the peace and tranquillity of this province than the quieting the estates of the inhabitants thereof, and for the effecting of which no better measures can be taken than a limitation of time for the commencing of such actions, as in the several and respective courts within this province are brought, from the time of the cause of such actions accruing;

"II BE IT ENACTED, *by the King's most excellent majesty, by and with the advice and consent of his majesty's Governor, Council and Assembly of this province, and the authority of the same,* That all actions of trespass *quare clausum fregit,* all actions of trespass, detinue, sur-trover, or replevin for taking away goods or chattels, all actions of account, contract, debt, book, or upon the case, other than such accounts as concerns the trade or merchandise between merchant and merchant, their factors and servants which are not residents within this province, all actions of debt for lending, or contract without specialty, all actions of debt for arrearages of rent, all actions of assault, menaces,

battery, wounding and imprisonment, or any of them, shall be sued or brought by any person or persons within this province, at any time after the end of this present session of assembly, shall be commenced or sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions of account, and the said actions upon the case, upon simple contract, book debt or account, and the said actions for debt, detinue and replevin for goods and chattels, and the said actions for trespass *quare clausum fregit*, within three years ensuing the cause of such action, and not after; and the said actions on the case for words, and actions of trespass of assault, battery, wounding and imprisonment, or any of them, within one year from the time of the cause of such action accruing, and not after.

. . . .

"VI. AND BE IT FURTHER ENACTED, *by the authority aforesaid, by and with the advice and consent aforesaid,* That no bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever, except such as shall be taken in the name or for the use of our sovereign Lord the king, his heirs and successors, shall be good and pleadable, or admitted in evidence against any person or persons of this province, after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing; saving to all persons that shall be under the afore-mentioned impediments of infancy, coverture, insanity of mind, imprisonment, or being beyond the sea, the full benefit of all such bills, bonds, judgments, recognizances, statutes merchant, or of the staple, or other specialties, for the space of five years after such impediment removed, any thing in this act before mentioned to the contrary notwithstanding."

\* \* \*

As reprinted in 2 J.J. Alexander, *British Statutes in Force in Maryland* 599, 600 (Coe 2d ed.1912), 21 James 1, ch. 16, § 3 (1623), reads:

"III.  And be it further enacted, That all Actions of Trespass, *Quare clausum fregit,* all Actions of Trespass, Detinue, Action sur Trover, and Replevin for taking away of Goods and Cattle, all Actions of Account, and upon the Case, other than such Accounts as concern the Trade of Merchandize between Merchant and Merchant, their Factors or Servants, all Actions of Debt grounded upon any Lending or Contract without Specialty; all Actions of Debt for Arrearages of Rent, and all Actions of Assault, Menace, Battery, Wounding and Imprisonment, or any of them which shall be sued or brought at any Time after the End of this present Session of Parliament, shall be commenced and sued within the Time and Limitation hereafter expressed, and not after (that is to say) (2) the said Actions upon the Case (other than for Slander) and the said Actions for Account, and the said Actions for Trespass, Debt, Detinue and Replevin for Goods or Cattle, and the said Action of Trespass, *Quare clausum fregit,* within three Years next after the End of this present Session of Parliament, or within six Years next after the Cause of such Actions or Suit, and not after; (3) and the said Actions of Trespass, of Assault, Battery, Wounding, Imprisonment, or any of them, within one Year next after the End of this present Session of Parliament, or within four Years next after the Cause of such Actions or Suit, and not after; (4) and the said Action upon the Case for Words, within one Year after the End of this present Session of Parliament, or within two Years next after the Words spoken, and not after."

\* \* \*

As reprinted in 10 *Halsbury's Statutes of England* 457 (1929), the Civil Procedure Act, 1833, 3 & 4 Will. 4, ch. 42, § 3, reads in full as follows:

"All actions of debt for rent upon an indenture of demise, all actions of covenant or debt upon any bond or other specialty, and all actions of debt or scire facias upon any recognizance, and also all actions of debt upon any award where the submission is not by specialty, or for any fine due in respect

of any copyhold estates, or for an escape, or for money levied on any fieri facias, and all actions for penalties, damages, or sums of money given to the party grieved by any statute now or hereafter to be in force, shall be commenced and sued within the time and limitation herein-after expressed, and not after; that is to say, the said actions of debt for rent upon an indenture of demise, or covenant or debt upon any bond or other specialty, actions of debt or scire facias upon recognizance, within twenty years after the cause of such actions or suits, but not after; the said actions by the party grieved, within two years after the cause of such actions or suits, but not after; and the said other actions within six years after the cause of such actions or suits, but not after; provided that nothing herein contained shall extend to any action given by any statute where the time for bringing such action is or shall be by any statute specially limited."